IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MICHAEL D. PRATT                                                    PLAINTIFF

V.                        Case No. 3:25-CV-00177-KGB-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration                                     DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal questions of fact.

## I.    INTRODUCTION

On July 25, 2022, Michael Pratt applied for Title II disability insurance benefits, alleging disability beginning on June 23, 2022. (Tr. at 13, 211). His claim was denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 13). On April 10, 2024, Pratt, who was then 54 years old, and his attorney appeared via video at the hearing with the ALJ. (Tr. at 32, 34, 39). Thereafter, on August 23, 2024, the ALJ issued a decision, concluding that Pratt was not disabled. (Tr. at 13–26). Pratt requested review by the Appeals Council, which was denied on July 23,

2025. (Tr. at 1–3). The ALJ's decision now stands as the final decision of the Commissioner, and Pratt requests judicial review. For the reasons set forth below, the Court recommends that the decision of the Commissioner be reversed and that the case be remanded for further administrative proceedings.

## II.     THE COMMISSIONER'S DECISION

At Step One of the sequential five-step analysis,[1] the ALJ found that Pratt had not engaged in substantial gainful activity since his alleged onset date of disability. (Tr. at 15). At Step Two, the ALJ identified the following severe impairments: degenerative joint disease of the right shoulder; chronic obstructive pulmonary disease; asthma; essential tremor; and bilateral sensorial hearing loss. *Id*. After finding at Step Three that none of Pratt's impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Pratt had the residual functional capacity ("RFC") to perform light work with some restrictions. (Tr. at 18). The ALJ found that Pratt could lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; he could stand or walk six hours in an eight-hour workday; he could sit six hours in an eight-hour workday; he could occasionally climb stairs, ramps, ladders, ropes, or scaffolds; he could frequently reach overhead with his right upper extremity; he could occasionally handle and finger; he could tolerate occasional exposure to vibration, fumes, odors, dust, gases, hazards, and

---

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

environments with poor ventilation; and he could work in an environment with moderate noise levels. *Id.*

Relying on the testimony of a vocational expert ("VE"), the ALJ found that Pratt was able to perform jobs that exist in significant numbers in the national economy. (Tr. at 24–25). Accordingly, the ALJ concluded that Pratt was not disabled. *Id.*

## III.   DISCUSSION

### A.   Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.

Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.    Pratt's Arguments on Appeal

On appeal, Pratt argues: (1) that the ALJ failed to include the full scope of Pratt's shoulder impairments in the hypotheticals presented to the VE, (Doc. 6 at 6–9); (2) that the ALJ erred in finding that Pratt did not meet or medically equal Listing 1.18 at Step 3, (*id*. at 9–15); and (3) that the ALJ erred in finding that Pratt did not meet a medically equivalent standard for a mental disorder, (*id*. at 15–20). Because the Court finds Pratt's first argument has merit, the decision of the Commissioner should be reversed.

### 1.    Relevant Medical History

On July 18, 2022, Pratt reported right shoulder pain to Carson York, PA. (Tr. at 477). Pratt stated that his pain "started when he was moving some things a week ago." (Tr. at 478). A physical examination revealed tenderness and limited range of motion in Pratt's right shoulder. (Tr. at 479). Pratt had an MRI on September 20, 2022, that revealed "severe impingement on rotator cuff with thinning of the rotator cuff secondary to down pointing acromion and pronounced degenerative changes and inflammatory changes involving the AC joint." (Tr. at 588). Pratt had a short course of physical therapy, a corticosteroid injection, and then, on January 4, 2023, Pratt had surgery on his right shoulder, consisting of arthroscopic debridement, partial claviculectomy, biceps tenodesis, and rotator cuff repair. (Tr. at 628, 688, 724, 731).

At his follow-up appointment on February 21, 2023, Pratt had almost full range of motion, minimal pain, and "look[ed] great considering how early it is in his recovery." (Tr. at 738). After several weeks of physical therapy, Pratt was discharged on March 8, 2023. (Tr. at 853). Although Pratt still lacked full range of motion, his pain was noted as a 1/10. (Tr. at 852). Pratt was instructed to continue with a home-exercise program. (Tr. at 852–53). At a surgical follow-up on April 6, 2023, examination notes state that Pratt "looks great today" and, although he lacked about 10 degrees of forward elevation and had "a little bit of dyskinesia," he "certainly has a functional arm." (Tr. at 736).

On September 19, 2023, Pratt reported left-shoulder pain. (Tr. at 904). An MRI in November showed a "clear tear of the superior labrum, impingement on the rotator cuff from subacromial bursitis, and a partial-thickness tear of the anterior supraspinatus." (Tr. at 900). Physician notes indicate that Pratt "had a good surgical outcome on his right shoulder couple years ago, and [he] would like to proceed with surgery on the left." *Id*. Thereafter, on January 15, 2024, Pratt had surgery on his left shoulder, consisting of arthroscopic debridement, biceps tenodesis, and arthroscopic subacromial decompression with acromioplasty and bursectomy. (Tr. at 906). Findings from the surgery included "extensive tearing of the superior glenoid labrum. . . . abundant intra-articular synovitis. . . . partial-thickness tear of the articular surface of the supraspinatus, . . . [and] an abundance of subacromial bursitis with a narrow acromiohumeral interval, with a prominent subacromial bony spur." *Id*.

Pratt again received post-operative physical therapy for several weeks. (Tr. at 986, 1032, 1039). He was discharged from physical therapy on April 3, 2024, after

demonstrating increased strength, improved range of motion, and pain at a 2/10 and improving. (Tr. at 1103–04). His physical therapist observed that Pratt "continues [to] note consistent grinding pain and with increased reps has increased burning pain in anterior shoulder though only with overhead motion." (Tr. at 1103). Pratt, however, met his goal of increasing his range of motion in his left upper extremity to allow for required activities of daily living. (Tr. at 1103–04). Pratt was to continue with a home-exercise program. (Tr. at 1104).

Shortly thereafter, on April 17, 2024, Pratt again saw Carson York, PA, complaining of insomnia and requesting medication refills. (Tr. at 928). York ruled out anxiety, snoring, depression, sleep apnea, pain, dyspnea, urinary frequency, and restless legs as causes of Pratt's insomnia. (Tr. at 930). In the physical examination notes, York indicated that Pratt had tenderness and limited range of motion of his right shoulder. *Id*.

Two state agency medical consultants reviewed Pratt's medical records—Dr. Prianka Gerrish at the initial determination in May 2023 and Dr. William Harrison at reconsideration in August 2023. (Tr. at 72, 83). Dr. Gerrish found that Pratt could perform light work but that he should be limited to frequent overhead reaching with his right upper extremity. (Tr. at 71). Dr. Harrison adopted Dr. Gerrish's opinion. (Tr. at 83). Neither doctor provided an opinion related to Pratt's left shoulder because, at that time, Pratt had not yet reported left-shoulder pain to his doctor, (Tr. at 904), had not had objective imaging of his left shoulder, (Tr. at 900), and had not had surgery to repair his left shoulder, (Tr. at 906).

### 2.    RFC

Pratt argues that none of the hypotheticals the ALJ posed to the VE addressed fully Pratt's documented shoulder problems. (Doc. 6 at 6). Specifically, Pratt asserts that the ALJ failed to include any limitations on Pratt's ability to reach overhead with his left upper extremity, despite substantial evidence in the record establishing pain in his left shoulder with overhead motion. *Id.* at 7–8. Pratt alternatively argues that the ALJ did not go far enough in addressing his right-shoulder impairment and that the limitation to frequent overhead reaching ignores evidence showing Pratt lacked full range of motion in his right shoulder. *Id.* at 8–9. The Court agrees that the ALJ did not adequately account for Pratt's left-shoulder impairment in assessing his RFC.

"Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citations omitted). A hypothetical posed to a VE is therefore considered sufficient when it "sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000)). The hypothetical only needs to include the impairments that the ALJ has found are substantially supported by the record. *Roe*, 92 F.3d at 675 (citations omitted). Because the second hypothetical posed to the VE matched the RFC adopted by the ALJ,[2] (Tr. at 60), Pratt's claim is more accurately examined as a challenge

---

[2] The first hypothetical the ALJ posed to the VE included all the limitations in the RFC, except it excluded the limitation to occasional handling and fingering bilaterally. (Tr. at 59–60). As noted, the second hypothetical matched the RFC. (Tr. at 60). In the third hypothetical, the ALJ asked the VE to add that the individual would only be able to stand or walk for two hours in an eight-hour workday. (Tr. at 61).

to the RFC. *See Thomas v. Bisignano*, No. 4:25-cv-00758-BSM-PSH, 2026 WL 1040310, at \*6 (E.D. Ark. Mar. 23, 2026) (noting that because the ALJ's hypothetical matched the RFC finding, Thomas's argument that the hypothetical was deficient was "simply asking the Court to reweigh the ALJ's RFC determination"), *adopted by Thomas v. Soc. Sec. Admin. Comm'r*, No. 4:25-cv-00758-BSM, 2026 WL 1039046 (E.D. Ark. Apr. 16, 2026).

A claimant bears the burden of establishing his RFC, *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019), which is "the most [he] can still do despite [his] limitations," 20 C.F.R. § 404.1545(a)(1). When determining a claimant's RFC, the ALJ must review all the relevant medical and other evidence, and the ALJ must consider all the claimant's impairments, including those the ALJ did not find severe at Step Two. 20 C.F.R. § 404.1545(a)(2)–(3). Although the ALJ is not required to include limitations that are not supported by the evidence in the record, *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003), the ALJ cannot simply cherry-pick facts that support finding non-disability while ignoring evidence that points to a disability finding, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). An ALJ must build "an accurate and logical bridge" from the evidence to his conclusions. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citations omitted). Failure to do so frustrates meaningful review. *See Keith v. Comm'r of Soc. Sec. Admin.*, No. 2:24-CV-00176-BRW-JTK, 2025 WL 893396, at \*3 (E.D. Ark. Mar. 24, 2025) (finding ALJ did not properly address or evaluate claimant's need for a cane or assistive device when record was in conflict on the issue), *adopted by Keith v. Comm'r of Soc. Sec. Admin.*, No. 2:24-CV-00176-BRW, 2025 WL 1161367 (E.D. Ark. Apr. 21, 2025); *see also Chunn v. Barnhart,*

8

397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings at Step Three were insufficient for meaningful appellate review).

Here, the ALJ omitted from her discussion of Pratt's left-shoulder impairment multiple mentions in Pratt's medical records that he was still experiencing pain with overhead movement after surgery on his left shoulder. For instance, notes from Pratt's final physical therapy appointment in April 2024—approximately a week before the hearing with the ALJ —indicate that Pratt was having "consistent grinding pain with increased reps" and "increased burning pain in anterior shoulder . . . with overhead motion." (Tr. at 1103). In addressing Pratt's left-shoulder impairment post-surgery, the ALJ cites only that Pratt reported some pain—2/10—in March 2024 and that, at an appointment unrelated to either shoulder in April 2024, Pratt's right shoulder was tender and limited in range of motion.[3]  (Tr. at 21–22, 928–31, 1046–51).

The ALJ did not cite any of the repeated observations from Pratt's physical therapist that Pratt was struggling with grinding, clicking, burning, and pain when his left shoulder went past 90 degrees. (Tr. at 1050, 1057, 1064, 1071, 1079, 1086, 1093, 1103). Nor did the ALJ mention Pratt's testimony—consistent with the medical record—that while both shoulders still ached, his left shoulder "pops and creaks every time I lift it above shoulder-level" and would burn with pain after his physical therapy visits. (Tr. at 19, 47).

Both state agency consultants who reviewed Pratt's medical records assessed a

---

[3] The Court is reluctant to rely on a single notation—that Pratt had tenderness and limited range of motion in his *right* shoulder—from an appointment for insomnia to conclude that his left shoulder was completely healed.

limitation on right overhead reaching, and the ALJ found those opinions, at least as far as the right shoulder was concerned, persuasive.[4] (Tr. at 23). Whether those consultants would have also assessed a limitation on left-side overhead reaching is unknown because they evaluated Pratt's records prior to his report of left-shoulder pain and resulting surgery. Curiously, the ALJ makes no mention of the fact that their opinions pre-date any medical treatment for Pratt's left-shoulder impairment.

In summary, Pratt had similar surgeries on both shoulders about a year apart, and based on the medical evidence in the record, healed well from his right-shoulder surgery but was still experiencing issues with his left shoulder following surgery. Yet the ALJ limited Pratt to frequent overhead reaching with his right upper extremity only, appearing to find him unencumbered in overhead reaching with his left upper extremity.

The Court acknowledges that this case is a close call, but because the ALJ fails to provide *any* explanation for limiting overhead reaching unilaterally—solely the right upper extremity—this Court must remand. Indeed, it remains unclear to the Court if the ALJ meant to impose no limitations on Pratt's use of his left upper extremity or if the ALJ intended to limit Pratt to jobs where he would only need to reach overhead frequently with his dominant, right upper extremity. That, however, is not a conflict for this Court to resolve. Therefore, based on the record in this case and the noted deficiencies in the ALJ's decision, the Court concludes that the ALJ's assessment of Pratt's RFC is not supported by

---

[4] The ALJ ultimately found that the opinions of the state agency consultants were only partially persuasive because they did not address Pratt's tremors, which the ALJ found limited him to occasional bilateral handling and fingering. (Tr. at 23).

substantial evidence.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole, necessitating remand.

IT IS THEREFORE RECOMMENDED THAT:

1.   The Commissioner's decision be REVERSED, and the case be REMANDED for further administrative review.

2.   Judgment be entered for the Plaintiff.

DATED this 12th day of June, 2026.

_____
UNITED STATES MAGISTRATE JUDGE